MAGGIE HALLOCK, as Administratrix of the Estate of GURNEY E. HALLOCK, Deceased, Respondent, *v.* NEW YORK, ONTARIO AND WESTERN RAILWAY COMPANY, Appellant.

Negligence — action for death of employee killed by railroad car — contributory negligence by deceased — when brakeman, even if negligent, not vice-principal of railroad company within meaning of chapter 657, Laws of 1906.

Plaintiff's intestate, who was defendant's station agent, in the performance of his duty, directed a car from a freight train to be switched upon a siding. While standing on or close to that track a few minutes after, the train, which was backing down for that purpose, struck him and he received injuries which, it is claimed, occasioned his death. *Held*, upon examination of the evidence, that he was guilty of contributory negligence.

The rear brakeman saw deceased on the track under such circumstances that, it is contended, he should have signaled the engineer to stop the train. *Held*, that if it be assumed that the brakeman was negligent, he was not a vice-principal of the defendant within the provisions of section 42a of chapter 657 of the Laws of 1906, and defendant was not liable for his negligence.

*Hallock* v. *N. Y., O. & W. Ry. Co.*, 132 App. Div. 943, reversed.

(Argued January 13, 1910; decided February 8, 1910.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 14, 1909, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Jotham P. Allds, Howard D. Newton* and *Joseph M. Forsyth* for appellant. Hallock was not free from contributory negligence. (*McHugh* v. *M. R. Co.*, 88 App. Div. 554; *Murphy* v. *Deans*, 101 Mass. 455; *T. H., etc., R. Co.* v. *Graham*, 95 Ind. 291; *Ludd* v. *Wilkins*, 118 Ga. 525; *Marble* v. *Ross*, 124 Mass. 44; *Forks* v. *King*, 84 Penn. St. 230; 7 Am. & Eng. Ency. of Law [2d ed.], 371; *Grippen* v.

*N. Y. C. R. R. Co.*, 40 N. Y. 44; *Shaw* v. *Jewett*, 86 N. Y.
616; *Calligan* v. *N. Y. C. & H. R. R. R. Co.*, 59 N. Y.
651; *Aerkfetz* v. *Humphreys*, 145 U. S. 418.) No negligence on the part of the defendant was shown. (*Chrystal* v.
*T. & B. R. R. Co.*, 124 N. Y..519; *Hoadley* v. *N., etc., Co.*,
115 Mass. 304; *Henry* v. *S., etc., R. Co.*, 50 Cal. 176; *Pennsylvania Co.* v. *Horton*, 132 Ind. 189; *Hoag* v. *L. S., etc.,
R. Co.*, 85 Penn. St. 293; *Sutton* v. *Town of Wauwatosa*, 29
Wis. 21; *Schmidt* v. *S., etc., R. Co.*, 132 N. Y. 566; 21 Am.
& Eng. Ency. of Law [2d ed.], 511; *Penn. Co.* v. *Hensit*, 70
Ind. 569; *Mire* v. *E. L. R. Co.*, 42 La. Ann. 385; *C., etc.,
R. Co.* v. *Dunn*, 23 Ill. App. 748; *G., etc., R. Co.* v. *Pettis*,
69 Tex. 689.) If the accident was due to the negligence of
any one else than the decedent, it was due to that of a fellowservant. (*Cox* v. *D. & H. Co.*, 128 App. Div. 363.)

*Frank C. Sargent* for respondent. The evidence shows
that plaintiff's intestate was free from contributory negligence.
(*Jetter* v. *N. Y. C. & H. R. R. R. Co.*, 2 Abb. Ct. App.
Dec. 258; *Feeney* v. *L. I. R. R. Co.*, 116 N. Y. 379; *Loomis*
v. *L. S. & M. S. R. R. Co.*, 182 N. Y. 380; *Barkley* v.
*N. Y. C. & H. R. R. R. Co..* 35 App. Div. 235.) The negligence of the defendant was clearly established. (*Schradin* v.
*N. Y. C. & H. R. R. R. Co.*, 124 App. Div. 705; 194 N. Y.
534; *Brown* v. *N. Y. C. & H. R. R. R. Co.*, 126 App. Div.
240; *Laplaca* v. *L. S. & M. S. R. R. Co.*, 127 App. Div. 843;
194 N. Y. 562.) The plaintiff's intestate received his injuries
through the negligence of the servants of the defendant, who
were vice-principals under the statute and not fellow-servants.
(L. 1906, ch. 657; *Schradin* v. *N. Y. C. & H. R. R. R. Co.*,
124 App. Div. 705; *Brown* v. *N. Y. C. & H. R. R. R. Co.*,
126 App. Div. 240; *Laplaca* v. *L. S. & M. S. R. R. Co.*,
127 App. Div. 843; *Cox* v. *D. & H. Co.*, 128 App. Div. 363.)

CULLEN, Ch. J. The action is brought, servant against
master, to recover damages for the death of the plaintiff's
intestate. The deceased was the station agent of the defend-

ant at a small station called Fish Creek.   In front of the station were three tracks, the nearest one a siding or switch track, the second the main track, and the third a temporary track rendered necessary for reasons unnecessary to relate. On the afternoon of August 27th, 1906, a freight train arrived at the station.   In it was a car to be left at the station.   On the siding were standing some other freight cars.   The conductor reported to the station agent, and was directed by him to place the newly-arrived car behind two of the cars standing on the siding.   This necessitated several movements of the train : *First,* to cut off the car that was to be left at the station ; then to remove the two cars behind which the train car was to be placed ; then to return them to the siding.   This work consumed some time.   Fifteen or twenty minutes after the arrival of the freight train a passenger train stopped at the station.   During this period parts of the freight train had been moved in front of the station at least three times.   The evidence tends to show that the deceased left the station to go to that train.   On his way he met a third person and entered into conversation with him for two or three minutes, either on or so close to the switch track that the cars, which were being backed down that track, struck him in the back, throwing him to the side of the track.   The injury was not regarded as severe at the time, the deceased continuing to discharge the duties of his position till the February following, when, after attending a horse race and a dance, he was taken ill and died three days later.   It was claimed by the respondent that at the time the deceased was hurt he received an injury to the kidneys, which occasioned his death.

While the evidence on the subject is not very satisfactory, we cannot say that the record is devoid of evidence sufficient to support the verdict of the jury that the injury was the cause of death.   Though that question is thus eliminated, the defendant contends that the record presents no evidence sufficient to justify a finding either that the plaintiff was free from contributory negligence, or that the accident was caused by negligence for which the defendant is responsible.   We think

the defendant is right in each of these contentions. The plaintiff relies on the following rule of the defendant company : " No. 2 A. Great care must be used by enginemen and trainmen on trains approaching a station where a train is due to stop, or is receiving and discharging passengers, to in no case pass the train on either side until such train has proceeded at least a train length beyond the station. Whenever regular passenger or other trains make extra stops to receive or discharge passengers, conductors and trainmen will exercise great care to avoid injury to passengers by trains moving on the opposite track." It is contended that the deceased had the right to rely on this rule and to assume that the movement of the cars of the freight train past the station would cease on the arrival of the passenger train. But with this rule there must be considered the further rule of the company, rule No. 192, by which the conductors of freight trains are required to report to and receive instructions from the station agents and carry out their wishes as to the placing and moving of cars at the station, and the station agents are given " charge of the yards where trains are made up, the movement of trains therein and the force employed." The deceased was aware that in compliance with his directions the switching or cutting out of the freight cars was being carried on ; that the work necessarily involved the movement of cars over the side track on which already some part of the freight train had three times passed. The track was straight for a long distance and the view thereover entirely unobstructed. With his knowledge of this situation he loitered for at least two or three minutes on this track without looking to see if the movement of the trains thereon had ceased. The man with whom he was conversing observed the approach of the cars and escaped. The situation of the deceased was very different from that of a passenger, who would have the right to rely on the presumption that his path from the train to the station would be safe and unobstructed. Indeed, it seemed to be part of the duty of the deceased to see that the rule of the company, made for the

safety and security of the passengers, was observed, instead
of which he took no heed of their safety or of his own.   In
this respect we think he was guilty of negligence.

   Though it was through his own negligence that the deceased
was in a place of danger, this would not excuse the negligence
of the train crew in running him down after his dangerous
position was apparent.   (*McKeon* v. *Steinway Ry. Co.*, 20
App. Div. 601 ; *Austin* v. *New Jersey Steamboat Co.*, 43
N. Y. 75 ; *Silliman* v. *Lewis*, 49 id. 379.)   When the
deceased was struck the cars were being backed on the siding,
the cars in advance and the engine in the rear.   The evi-
dence showed that the rear brakeman saw the deceased on the
side track at some distance from the point at which the acci-
dent occurred, as he says, either a car's length or two distant.
The brakeman testified that he called out to the deceased
and the man who was with him and expected that they
would move away.   It is contended for the plaintiff that
the warning given was insufficient, and the brakeman should
have signaled the engineer to stop the train.   If it be
assumed that the evidence was sufficient to justify a finding
of negligence on the brakeman's part, the question remains
whether the defendant was responsible to this plaintiff for
that negligence.   The deceased and the brakeman were fellow-
servants and before the enactment of chapter 657 of the Laws
of 1906 (sometimes called the Barnes Act), concededly the
defendant would not have been liable for injury to one serv-
ant by the negligence of a co-servant.   That statute, however,
changed the rule as to liability for the misconduct of certain
railroad employees.   The relevant parts are the following :
" § 42-a.   In all actions against a railroad corporation, foreign
or domestic, doing business in this state, or against a receiver
thereof, for personal injury to, or death resulting from per-
sonal injury of any person, while in the employment of such
corporation, or receiver, arising from the negligence of such
corporation or receiver or of any of its or his officers or employ-
ees, every employee, or his legal representatives, shall have the
same rights and remedies for an injury, or for death, suffered

by him, from the act or omission of such corporation or receiver or of its or his officers or employees, as are now allowed by law, and, in addition to the liability now existing by law, it shall be held in such actions that persons engaged in the service of any railroad corporation; foreign or domestic, doing business in this state, or in the service of a receiver thereof, who are entrusted by such corporation or receiver, with the authority of superintendence, control or command of other persons in the employment of such corporation or receiver, or with the authority to direct or control any other employee in the performance of the duty of such employee, or who have, as a part of their duty, for the time being, physical control or direction of the movement of a signal, switch, locomotive engine, car, train or telegraph office, are vice-prinpals of such corporation or receiver, and are not fellow-servants of such injured or deceased employee." The rear brakeman was not a vice-principal within the provisions of this statute. His duty to signal or convey information to the engineer of when the train had approached the point at which it should be stopped, a thing which the engineer himself could not observe because of the position of the engine at the rear of the train, did not, in any proper sense of the term, give him authority to control or direct the engineer in the movement of the train. The direction and control referred to in the statute means that which is conferred by or proceeds from superior authority, not from the mere fact that the engineer had to rely on an inferior employee to discern something which he could not see for himself. This is the necessary effect of our decision in *Brown* v. *N. Y. C. & H. R. R. R. Co.* (126 App. Div. 240; affd., 196 N. Y. 542). In that case the deceased, a brakeman, was engaged in coupling cars. The rule was that when any one was engaged in that work, signal or word directing the movement of the cars was to be given only by him. The deceased was killed by a car being moved while he was thus engaged, through a mistake in the direction given by a conductor who was standing alongside of the train. It was urged for the appellant that under the rule it was the deceased

himself, not the conductor, who was the person having control and direction of the train and that, therefore, the defendant was not liable. We held to the contrary and that the fact that the conductor received notice or warning from the deceased did not deprive him of his authority and control over the movements of the train. Nor can it be held that the brakeman was in the "physical control or direction of the movement of a signal." The association in the statute of the word "signal" with the terms "switch," "locomotive engine," "car," "train," seems primarily directed to the operation of mechanical devices or machinery. In the case of *Schradin* v. *N. Y. C. & H. R. R. R. Co.* (124 App. Div. 705 ; affd. without opinion, 194 N. Y. 534) the negligence charged was that of the engineer running the train with which the deceased was killed and also that of a watchman specially detailed to warn, by a megaphone, the deceased and his fellow-workmen, who were employed in erecting electric appliances along the track, of danger from approaching trains. No point was raised by the defendant that the watchman was not in charge of a signal. It may very well be, however, that had it been raised, it would have been overruled, and we would have held an employee whose special or sole function it was to give warning and notice to persons working, was in charge of a signal within the spirit of the statute, even though a mechanical device was not used. But the statute cannot be extended so as to include cases where the notice or information or warning conveyed by an employee to another employee is a mere incident of the employee's duty. In the movement of the cars in the making up of trains and the distribution of cars when the train has arrived at its destination, numberless notices, warnings or signals, if they are to be called such, must be given by one trainman to the others and often finally to the conductor. Errors or negligence in these respects, unfortunately, are most common causes of injuries to employees in the movement of railroads. If the legislature had intended to make a railroad company liable in all such cases for injuries to its employees occasioned by the negligence of co-employees,

the intent would have been very readily expressed by simple and clear language, while the present statute seems, on the contrary, to plainly confine liability for such injuries solely to negligence on the part of certain specified employees. We are of opinion, therefore, that the defendant was not liable for the negligence of the rear brakeman, if such negligence there was.

The judgment should be reversed and new trial granted, costs to abide event.

GRAY, EDWARD T. BARTLETT, HAIGHT, VANN, WERNER and HISCOCK, JJ., concur.

Judgment reversed, etc.